Citation Nr: 1722248 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 10-18 388 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to an initial compensable rating for bilateral hearing loss.

2. Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD).

3. Entitlement to service connection for irritable bowel syndrome (IBS), including as due to service-connected PTSD.

4. Entitlement to service connection for hiatal hernia, including as due to service-connected PTSD.

5. Entitlement to service connection for a sleep disorder, including as due to service-connected PTSD.

6. Entitlement to service connection for irritable bowel syndrome (IBS), including as due to service-connected PTSD.

7. Entitlement to service connection for erectile dysfunction, including as due to service-connected PTSD.

8. Entitlement to service connection for a skin disorder, including as due to herbicide exposure.

9. Entitlement to a total disability rating based on unemployability due to service-connected disability (TDIU).


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

Michael Sanford, Associate Counsel


INTRODUCTION

The Veteran had active military service from November 1967 to October 1969, including service in the Republic of Vietnam.

These matters come before the Board of Veterans' Appeals (Board) on appeal from September 2009 and February 2010 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona.

In July 2013, the Veteran and his wife testified before the Board at the RO in Phoenix. A transcript of that proceeding is of record.

In October 2014, the Board granted service connection for bilateral peripheral neuropathy of the upper and lower extremities, as well as a 10 percent rating for shrapnel wounds. In addition, the Board remanded the issues listed on the cover page of this decision for further development.

The issues of service connection for a skin disability, GERD and ED and a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Throughout the entire appeal period, the Veteran had had bilateral hearing loss manifested by no worse than Level I hearing acuity in the right ear and Level II hearing acuity in the left ear.

2. For the entirety of the appeal period, the Veteran's PTSD has been manifested by anger, anxiety, nightmares, isolation, impairment with thought process and communication, impaired impulse control, and difficulty establishing and maintaining effective relationships that approximate occupational and social impairment with reduced reliability and productivity.

3. The Veteran does not have IBS.

4. The Veteran does not have hiatal hernia.

5. The Veteran's current diagnosis of sleep apnea is not attributable to his service-connected PTSD.


CONCLUSIONS OF LAW

1. The criteria for an initial compensable disability rating for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code (DC) 6100 (2016).

2. The criteria for an initial evaluation of 50 percent for PTSD have been met. 
38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.130, DC 9411 (2016).

3. The criteria for service connection for IBS are not met. 38 U.S.C.A. §§ 1110, 5107(b) (West 2014); 38 C.F.R. § 3.303 (2016).

4. The criteria for service connection for hiatal hernia are not met. 38 U.S.C.A. §§ 1110, 5107(b) (West 2014); 38 C.F.R. § 3.303 (2016).

5. The Veteran does not have a sleep disorder that is proximately due to his service-connected PTSD. 38 U.S.C.A. §§ 1110, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits pursuant to 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159.

With regards to the claims for service connection decided herein, VA's duty to notify has been satisfied through a notice letter dated November 2009, which fully addressed all notice elements. This letter informed the Veteran of what evidence was required to substantiate his claims for service connection, to include on a secondary basis, of the Veteran's and VA's respective duties for obtaining evidence. The Veteran was afforded a meaningful opportunity to participate effectively in the processing of his claim and given ample time to respond.

With regard to PTSD and bilateral hearing loss, the disagreement arises from the initial award of service connection. Where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service connection claim has been more than substantiated, it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Dingess v. Nicholson, 19 Vet. App. 473 (2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

The Board, therefore, finds that all notice required by the Veteran Claims Assistance Act (VCAA) and implementing regulations were furnished to the Veteran and that no useful purpose would be served by delaying appellate review to send out additional VCAA notice.

VA must also make reasonable efforts to assist the Veteran in obtaining evidence necessary to substantiate the claims, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

Service treatment records are associated with the claims file. All post-service treatment records and reports identified by the Veteran related to the claims decided herein have also been obtained. The Veteran has not identified any additional records that should be obtained prior to a Board decision. Therefore, VA's duty to further assist in locating additional records has been satisfied.

The Veteran has been afforded multiple VA examinations to determine the severity of his service-connected PTSD and bilateral hearing loss over the course of this appeal. Each examination contains findings responsive to the applicable rating criteria. Further, each examination included a thorough discussion of the Veteran's symptomatology relating to those disabilities. As such, the Board finds them adequate for the purpose of deciding the issues considered herein. See generally Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Indeed, the Veteran has not argued that those VA examinations are somehow inadequate. Moreover, the Veteran was afforded contemporaneous examinations for his increased rating claims in substantial compliance with the October 2014 remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

As regards the service connection claims decided herein, the Veteran was afforded VA examinations in 2014. The examiners declined to diagnose the Veteran with hiatal hernia and IBS after physical examination. Sleep apnea was diagnosed and, in a June 2015 addendum, an examiner opined as to the relationship between sleep apnea and service connected PTSD. A rationale was provided to support that opinion. Thus, the Board finds those examinations and addendum adequate for decided the issues considered herein. See generally Barr, 21 Vet. App. at 311. Moreover, as those examinations were conducted and the opinion as to sleep apnea was rendered, substantial compliance with the Board's October 2014 remand directives was achieved. See Stegall, 11 Vet. App. at 271.

In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the Veteran in developing the facts pertinent to the issues decided herein is required to comply with the duty to assist. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159.

Merits

I. Increased Ratings

Disability evaluations are determined by the application of the Schedule for Rating Disabilities, which allows for ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). 

In this appeal, the Veteran is challenging the initially assigned disability ratings. The appeal has been in continuous appellate status since the original assignments of service connection. The evidence to be considered includes all evidence proffered in support of the original claim. Fenderson v. West, 12 Vet. App. 119 (1999). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

A. Bilateral Hearing Loss

The Veteran's bilateral hearing loss has been rated noncompensable under DC 6100.

The assigned evaluation for hearing loss is determined by mechanically applying the rating criteria to certified test results. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Under the applicable criteria, ratings for hearing loss are determined in accordance with the findings obtained on audiometric examinations. Evaluations of hearing impairment range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests (Maryland CNC), together with the average hearing threshold level as measured by puretone audiometry tests in the frequencies of 1000, 2000, 3000, and 4000 Hertz. The rating criteria establish eleven auditory acuity levels designated from I to XI. As set forth in the regulations, Tables VI, VIa, and VII are used to calculate the rating to be assigned. See 38 C.F.R. § 4.85, DC 6100 (2016).

Additionally, the regulations allow for evaluating exceptional patterns of hearing impairment. When the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, Table VI or Table VIa is to be used, whichever results in the higher numeral. Each ear will be evaluated separately. 38 C.F.R. § 4.86(a) (2016). When the puretone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, Table VI or Table VIa is to be used, whichever results in the higher numeral. Thereafter, that numeral will be elevated to the next higher numeral. Each ear will be evaluated separately. 
38 C.F.R. § 4.86(b).

The Veteran was afforded a VA examination in May 2009. On the May 2009 VA examination, pure tone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Average
RIGHT
10
10
45
55
30
LEFT
15
15
85
90
51.25

Speech recognition was 92 percent bilaterally. An exceptional pattern of bilateral hearing loss was not shown. See 38 C.F.R. § 4.86. Under Table VI, the Veteran's right ear is assigned Roman numeral I and the left ear is assigned Roman numeral I. Under Table VII, if both ears are rated I, a zero percent disability rating is assigned. 

The Veteran was afforded a VA examination in December 2014. On the December 2014 VA examination, pure tone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Average
RIGHT
10
20
65
70
41
LEFT
15
25
90
100
58

Speech recognition was 96 percent in the right ear and 100 percent in the left ear. An exceptional pattern of bilateral hearing loss was not shown. See 38 C.F.R. § 4.86. Under Table VI, the Veteran's right ear is assigned Roman numeral I and the left ear is assigned Roman numeral II. Under Table VII, if one ear is rated I and the other is rated II, a zero percent disability rating is assigned.

There are no records reflecting treatment for hearing loss. At the Board hearing, the Veteran testified to a reduced hearing ability.

Although the Veteran argues that a higher rating during this period is warranted, the evidence of record does not indicate that a compensable rating is appropriate here. As already noted, the rating assigned for hearing loss is determined by a mechanical application of the rating schedule, which is grounded on numeric designations assigned to audiometric examination results. Lendenmann, 3 Vet. App. at 349.

The Board has also considered the effect the hearing loss has on the ordinary conditions of life and the Veteran's ability to work. The 2009 examination noted that significant effects on the Veteran's occupation in the form of hearing difficulty. The 2014 examination noted problems hearing with background noise. He also reported trouble hearing the television

In reaching this decision, the Board considered the benefit-of-the-doubt rule; however, the preponderance of the evidence is against the Veteran's claim for an initial compensable evaluation, as the evidence of record does not show that the criteria for a compensable rating have been met. Therefore, an initial compensable evaluation is not warranted.

B. PTSD

The Veteran is service-connected for PTSD, rated under 38 C.F.R. § 4.130, DC 9411, according to the General Rating Formula for Mental Disorders. The schedular criteria for rating psychiatric disabilities incorporate the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV). See 38 C.F.R. §§ 4.125, 4.130. (The Board recognizes that the Veterans Benefits Administration now utilizes DSM-5; however, the VA Secretary has indicated that the change does not apply to claims pending before the Board, such as this one. 79 Fed. Reg. 45094 (Aug. 4, 2014)). 

Under the General Rating Formula, a 30 percent evaluation is warranted if there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, DC 9411.

A 50 percent evaluation is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent disability rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relationships, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A 100 percent disability rating is warranted for total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The list of symptoms under the rating criteria are intended to serve as examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). If the evidence shows that the Veteran suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate equivalent rating will be assigned. Id. at 443. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has embraced the Mauerhan Court's interpretation of the criteria for rating psychiatric disabilities. Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004).

The Global Assessment of Functioning (GAF) score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (1996).

Notably, GAF scores ranging from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well and has some meaningful interpersonal relationships. Id. 

The Federal Circuit has also recently stated that evaluation under § 4.130 is "symptom-driven" and that "a veteran may only qualify for a given disability rating under [these criteria] by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." It was further noted that § 4.130 "requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas." Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013).

The Veteran was afforded a VA examination in May 2009. The Veteran reported depression and anger. He stated that he has experienced passive suicidal ideation with no plan or intent. He stated that he has nightmares every other week and wakes up most nights in a sweat. He reported about five hours of sleep per night and trouble falling asleep. He also stated that he experiences decreased short-term memory and concentration. He also reported that he is emotionally numb towards others. He explained that he avoids watching war movies and talking about his experiences during service. The Veteran noted that he sits with his back towards the wall to keep watch over others. He has an ongoing relationship with his siblings and wife. He reported a good relationship with his children. He explained that he likes going fishing and hiking. Mental status examination revealed orientation in all spheres. Affect was appropriate. Speech was normal. Thought process was spontaneous and goal-oriented. Intermittent passive suicidal ideation was noted. Judgment and insight appeared to be good. Intelligence was average. A GAF of 61 was recorded.

The Veteran was afforded a VA examination in December 2014. The examiner stated that PTSD results in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The Veteran remained married to his wife of 48 years. The marriage was described as satisfactory. He reported a positive relationship with his children and siblings. The Veteran reported going to the gym and reading. He stated that he helps a neighbor, when he is able. He reported going to church. There was no mental health treatment history. He noted a history of physical outbursts, the last occurring about four years ago. Symptoms were: anxiety, chronic sleep impairment, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or a worklike setting. The Veteran was casually dressed and well-groomed. Speech was normal and the Veteran was cooperative and pleasant.

There are no records reflecting treatment for PTSD. At the Board hearing, the Veteran and his spouse testified to the Veteran's problems with nightmares and increased anger and anxiety.

In light of the above, the Board concludes that an initial 50 percent rating, and no higher, is warranted for PTSD. The Veteran has reported some suicidal ideation and chronic sleep impairment. Moreover, frequent nightmares were also noted. The Veteran also reported avoidance of things that will trigger his memory of Vietnam. The Veteran also explained that he had a history of physical outbursts at his 2014 VA examination. Finally, the Veteran reported that he sits with his back to the wall so that he can watch everything in front of him. Given that symptomatology, the Board finds that the Veteran's PTSD results in occupational and social impairment with reduced reliability and productivity, as required for an initial 50 percent rating.

In finding that the Veteran's PTSD warrants an initial 50 percent rating, the criteria for a higher rating are not shown. The evidence does not reflect that PTSD is productive of for occupational and social impairment, with deficiencies in most areas or total social and occupational impairment, as required for a higher rating. To that end, the Veteran maintains positive relationships with his wife, children and siblings. Likewise, he reported going to church. Mental status examinations in 2009 and 2014 were normal and the Veteran did not display any inappropriate behavior at those examinations. The Veteran also reported pursuing leisurely activities like fishing and going to the gym. He also reported going out of his way to help a neighbor when he is able to do so. The Board acknowledges that the Veteran reported some passive suicidal ideation at the 2009 VA examination. While this symptom is specifically listed in the criteria for a 70 percent rating, the Board finds his overall symptomatology is most congruent with the criteria for a 50 percent rating. Indeed, the only GAF score of record, from the 2009 VA examination, reflects mild symptoms related to PTSD. In light of the above, the criteria for a rating in excess of 50 percent for PTSD are not met.

For those reasons, an initial 50 percent rating, and no higher, for PTSD are met. 38 C.F.R. § DC 9411 (2016).

C. Other Considerations

The Board must also determine whether the schedular evaluation is inadequate, thus requiring that the RO refer the claims for consideration of "an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1) (2016). An extraschedular evaluation is for consideration where a service-connected disability presents an exceptional or unusual disability picture. An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of the Veteran's service-connected disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment or frequent periods of hospitalization. Id. at 115-16. When either of those elements has been satisfied, the appeal must be referred for consideration of the assignment of an extraschedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321(b)(1); Thun, 22 Vet. App. at 116.

The Board finds that the symptomatology and impairment caused by the Veteran's PTSD and bilateral hearing loss is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The criteria thus contemplate the symptoms, and consideration of whether there has been marked interference with employment or frequent hospitalization is therefore not required

In Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), the Federal Circuit held that "[t]he plain language of § 3.321(b)(1) provides for referral for extraschedular consideration based on the collective impact of multiple disabilities." Here, however, the issue has not been argued by the Veteran or reasonably raised by the evidence of record. The Veteran has not asserted, and the evidence of record does not suggest, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Yancy v. McDonald, 27 Vet. App. 484, 495 (Fed. Cir. 2016) ("the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities"). The Board will therefore not address the issue further.

Although a TDIU is a component of each increased rating claim, Rice v. Shinseki, 22 Vet. App. 447 (2009), such is being remanded, as will be discussed in greater detail below.




II. Service Connection

Service connection may be granted for disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C.A. § 1110. Generally, service connection requires (1) the existence of a present disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Service connection may be granted for a disability that is proximately due to or the result of a service-connected disease or injury. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310(a). Service connection may also be granted on a secondary basis where a condition is aggravated by a service-connected disability. 38 C.F.R. § 3.310(b). To warrant service connection on a secondary basis, the evidence must show that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Compensation for secondary service connection based on aggravation of a non-service-connected condition is only warranted for the degree of disability over and above the degree of disability existing prior to the aggravation. Allen v. Brown, 7 Vet. App. 439 (1995).

A. Irritable Bowel Syndrome

The Veteran contends that service connection for IBS is warranted. 

Crucially, a diagnosis of IBS has not been shown. The Veteran was afforded a VA examination in December 2014. The examiner noted symptoms of diarrhea and constipation. The examiner, however, stated that had never been diagnosed with an intestinal condition and did not have an intestinal condition at that time. Indeed, the examiner noted "alternating diarrhea and constipation with no diagnosis." The examiner stated that no diagnosis could be established. In a June 2015 addendum, another examiner explained that the Veteran has not been diagnosed with IBS and only has complained of alternating diarrhea and constipation, which are not medical diagnoses.

The Veteran did not report that he has been diagnosed with IBS. Indeed, no medical treatment record notes a diagnosis of IBS. Further, it is apparent from the December 2014 VA examination report that the examiner concluded that a diagnosis was not appropriate after conducting a battery of tests. Thus, the Board concludes that the weight of the evidence is against a finding that IBS has been diagnosed.

In the absence of disability, service connection is not warranted. The case law is well settled on this point. In order for a claimant to be granted service connection for a claimed disability, there must be evidence of a current disability. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

To the extent that the Veteran asserts that his symptomatology is indicative of IBS, lay evidence may be competent on a variety of matters concerning the nature and cause of disability. Jandreau v. Shinseki, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). The general principle that diarrhea and constipation be symptoms of IBS would likely be known to the Veteran; therefore, his contention that he has constipation and diarrhea has some tendency to establish a diagnosis. Once the threshold of competency is met, however, the Board must consider how much of a tendency a piece of evidence has to support a finding of the fact in contention. Not all competent evidence is of equal value. The Board finds the clinical evidence more probative than the Veteran's statements. The VA examiner is a medical professional and was able to examine the Veteran, utilize diagnostic testing and review the overall record, including the Veteran's history and opinions.

Accordingly, the Veteran does not exhibit IBS. In the absence of proof of a current disability, there can be no valid claim. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); see Degmetich v. Brown, 104 F. 3d 1328, 1332 (1997). Congress has specifically limited entitlement to service connection to cases where such incidents have resulted in a disability. Brammer, 3 Vet. App. at 225. Therefore, the Veteran's claim of entitlement to service connection for IBS is denied.

B. Hiatal Hernia

The Veteran contends that service connection for hiatal hernia is warranted. 

Crucially, a diagnosis of hiatal hernia has not been shown. The Veteran was afforded a VA examination in December 2014. The examiner noted symptoms of pyrosis and reflux; however, the examiner stated that had never been diagnosed with an esophageal condition and did not have an esophageal condition at that time. 

The Veteran did not report that he has been diagnosed with hiatal hernia. Indeed, no medical treatment record notes a diagnosis of hiatal hernia. Further, it is apparent from the December 2014 VA examination report that the examiner concluded that a diagnosis was not appropriate after conducting a battery of tests. Thus, the Board concludes that the weight of the evidence is against a finding that hiatal hernia has been diagnosed.

In the absence of disability, service connection is not warranted. The case law is well settled on this point. In order for a claimant to be granted service connection for a claimed disability, there must be evidence of a current disability. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

To the extent that the Veteran asserts that his symptomatology is indicative of hiatal hernia, lay evidence may be competent on a variety of matters concerning the nature and cause of disability. Jandreau, 492 F.3d at 1377. The general principle that pyrosis and reflux could be symptoms of hiatal hernia would likely be known to the Veteran; therefore, his contention that he has pyrosis and reflux has some tendency to establish a diagnosis. Once the threshold of competency is met, however, the Board must consider how much of a tendency a piece of evidence has to support a finding of the fact in contention. Not all competent evidence is of equal value. The Board finds the clinical evidence more probative than the Veteran's statements. The VA examiner is a medical professional and was able to examine the Veteran, utilize diagnostic testing and review the overall record, including the Veteran's history and opinions.

Accordingly, the Veteran does not exhibit hiatal hernia. In the absence of proof of a current disability, there can be no valid claim. Boyer, 210 F.3d at 1353; see Degmetich, 104 F. 3d at 1332. Congress has specifically limited entitlement to service connection to cases where such incidents have resulted in a disability. Brammer, 3 Vet. App. at 225. Therefore, the Veteran's claim of entitlement to service connection for hiatal hernia is denied.

C. Sleep Disorder

As a preliminary matter, in his initial claim, the Veteran indicated that he believed his sleep apnea was secondary to his service-connected PTSD. The Board notes that the Veteran has clarified on multiple occasions, including in his August 2012 VA Form 9, that he believes his sleep disorder developed not as a direct result of service, but secondary to his service-connected PTSD. The Board will thus address his claim for service connection for a sleep disorder on a secondary basis.

That the Veteran has been diagnosed with sleep apnea is not in doubt. Indeed, such a diagnosis was rendered at the December 2014 VA examination. There are no other sleep disorder diagnoses of record.

Regarding nexus, in a June 2015 addendum, a VA examiner opined that it was less likely than not that sleep apnea was proximately due to or the result of PTSD and medical evidence does not support the theory that sleep apnea is caused or made worse by PTSD. As rationale, the examiner explained that sleep apnea is caused by an obstruction. Specially, an obstruction is a structural or mechanical aberration of the naso-pharyngeal architecture that interferes with normal respiration during sleep. The examiner cited a host of medical articles and explained that there is no medical evidence that a mental health disorder, like PTSD, can contribute to a naso-pharyngeal structural/architectural condition, like sleep apnea. The Board finds that the VA examiner's opinion is thorough and supported by a well-reasoned, in-depth rationale. Thus, it is highly probative. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir.1996) (Board charged with assessing the probative value of all evidence of record).

To the extent that the Veteran himself asserts that sleep apnea is either caused or aggravated by PTSD, these statements relate to an internal medical process which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. See Jandreau v. Nicholson, 492 F.3d 1372, 1377, n. 4 (Fed. Cir. 2007) ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). To the extent that the Veteran's statements are competent, the Board finds that the specific, reasoned opinion of the trained health care provider who provided the June 2015 VA medical opinion are of greater probative weight than the Veteran's more general lay assertions.

In sum, the Board finds the June 2015 VA medical opinion the most probative evidence as to the issue of any relationship between sleep apnea and PTSD. The examiner provided a cogent and thorough rationale to support her conclusion that it was less likely than not that sleep apnea was caused or aggravated by PTSD. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). This evidence is more probative than the Veteran's lay assertions. As such, the Board concludes that most probative evidence weighs against a finding that the Veteran's sleep apnea is either caused or aggravated by PTSD.

Based on the foregoing, the preponderance of the evidence is against the Veteran's claim. Thus, the benefit-of-the-doubt rule does not apply, and service connection for a sleep disorder must be denied. See 38 U.S.C.A. § 5107(b).


ORDER

Entitlement to an initial compensable rating for bilateral hearing loss is denied.

An initial rating of 50 percent, but no higher, for PTSD is granted, subject to the laws and regulations governing the payment of monetary benefits.

Entitlement to service connection for IBS is denied.

Entitlement to service connection for hiatal hernia is denied.

Entitlement to service connection for a sleep disorder is denied.


REMAND

Review of the Veteran's claims file reveals that further development on the remaining issues is necessary.

ED

The Veteran was afforded a VA examination in December 2014, where he was diagnosed with ED. In a June 2015 addendum opinion, a VA examiner explained that "I am unable to determine if the Veteran truly has ED, as condition itself is self-reported with no documentation in CPRS records, in light of this I am unable to determine if Veteran's self-reported ED has been caused or made worse by PTSD or his service connected diabetes mellitus without resorting to mere speculation."

The Board finds the opinion unclear. The June 2015 examiner referred to ED as self-reported, but ED was diagnosed at the December 2014 VA examination. Moreover, the June 2015 VA examiner offered no opinion as to the etiology of ED as there was no documentation of ED in the Veteran's record. In light of the examiner's inability to offer an opinion, remand is necessary to obtain an opinion as to the etiology of ED.

Skin Disability

The Veteran was afforded a VA examination in December 2014. There the examiner noted a diagnosis of tinea pedis, cruris and corporis, but stated that such was not present on examination. There, the Veteran reported that during his time in Vietnam, he developed a rash on his feet and groin and ring worm on his left cheek. The Veteran also reported that he develops a fungus or rash intermittently since his return from Vietnam. In a September 2009 note, Dr. M.M. noted that the Veteran's foot rash started during his time in Vietnam, with the toenails and left hand fingernails also involved. Dr. M.M. stated that the Veteran "is doing beautifully now after a course of oral Lamisil."

In a June 2015 addendum opinion, a VA examiner concluded that it was less likely than not that the Veteran's skin disability was related to service. As rationale, the examiner noted the documented in-service episode of ring worm. The examiner stated that the infection was acute and apparently resolved as there were no skin diseases upon separation. The examiner also explained that there were no skin diseases present on the December 2014 VA examination. The examiner also explained that there is no association between herbicide exposure and fungal infections.

The Board finds the June 2015 addendum inadequate. The examiner did not comment on the Veteran's reports that he has experienced skin problems intermittently since service. To that end, despite the fact that no skin disability was shown at the December 2014 VA examination, Dr. M.M.'s note references that the Veteran has experienced skin problems and those problems apparently resolved following treatment. Moreover, the examiner did not comment on Dr. M.M.'s note that while the Veteran was doing better, he began experiencing a foot rash in Vietnam. For those reasons, further addendum opinion regarding the Veteran's skin disability is necessary.

GERD

Regarding GERD, in a June 2015 addendum opinion, a VA examiner stated that there is "no evidence that [GERD] existed in the military, no documentation in STRs, therefore it is less likely than not that GERD condition is attributable to the Veteran's time on active duty."

This opinion, too, is inadequate. The examiner relied solely on the lack of service treatment records showing GERD as the basis for the opinion rendered. See Dalton v. Nicholson, 21 Vet. App. 23 (2007) (examination inadequate where the examiner relied on lack of evidence in service treatment records to provide negative opinion). Further, the Veteran reported experiencing heartburn immediately upon returning from Vietnam. See Board Hearing Transcript at 10. The examiner did not address the Veteran's lay contentions regarding his GERD symptomatology. As such, a new addendum opinion is necessary.

TDIU

Regarding a TDIU, that issue is inextricably intertwined with the issues of service connection being remanded. See Harris v. Derwinski, 1 Vet. App. 180 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final decision on one issue cannot be rendered until a decision on the other issue has been rendered). As such, the Board will defer adjudication on the TDIU issue pending the requested development.

Accordingly, the case is REMANDED for the following action:

1. Provide the claims file, including a copy of this remand, to a qualified medical professional for an addendum opinion. If it is determined an additional examination of the Veteran is necessary, one is to be arranged. The entire claims file, including any electronic records, must be reviewed by the examiner in conjunction with the examination.

The examiner is requested to opine as to the following:

a. Is it at least as likely as not (i.e., 50 percent or greater probability) that ED was caused OR has been aggravated (worsened beyond the natural progression) by his service-connected diabetes mellitus type 2. If aggravation is found, the examiner should attempt to quantify the degree of additional disability resulting from the aggravation, consistent with 38 C.F.R. § 3.310(b).

b. Is it at least as likely as not (i.e., 50 percent or greater probability) that ED was caused OR has been aggravated (worsened beyond the natural progression) by his service-connected PTSD. If aggravation is found, the examiner should attempt to quantify the degree of additional disability resulting from the aggravation, consistent with 38 C.F.R. § 3.310(b).

A complete rationale for all opinions should be provided. If the examiner is unable to provide the requested opinion without resort to speculation, the reasons and bases for this conclusion should also be provided.

2. Return the claims file, including a copy of this remand, to the VA examiner who provided the June 2015 addendum opinion for another addendum. If the June 2015 VA examiner is unavailable, the claims file should be forwarded to another qualified examiner. If it is determined an additional examination of the Veteran is necessary, one is to be arranged. The entire claims file, including any electronic records, must be reviewed by the examiner in conjunction with the examination.

The examiner is requested to opine as to the following:

Is it at least as likely as not (i.e., 50 percent or greater probability) that the Veteran's skin disability had its clinical onset during service or is otherwise related to service, to include his conceded exposure to herbicides?

In providing a rationale, the examiner must comment on the Veteran's report of experiencing skin problems intermittently since service and the 2009 note of Dr. M.M. The lack of any skin disability at the December 2014 VA examination cannot be used as a basis for a negative opinion.

A complete rationale for all opinions should be provided. If the examiner is unable to provide the requested opinion without resort to speculation, the reasons and bases for this conclusion should also be provided.

3. Return the claims file, including a copy of this remand, to the VA examiner who provided the June 2015 addendum opinion for another addendum. If the June 2015 VA examiner is unavailable, the claims file should be forwarded to another qualified examiner. If it is determined an additional examination of the Veteran is necessary, one is to be arranged. The entire claims file, including any electronic records, must be reviewed by the examiner in conjunction with the examination.

The examiner is requested to opine as to the following:

Is it at least as likely as not (i.e., 50 percent or greater probability) that the Veteran's GERD had its clinical onset during service or is otherwise related to service?

In providing a rationale, the examiner must comment on the Veteran's report of heartburn immediately upon returning from Vietnam. A lack of service treatment records showing GERD or GERD symptoms may not be used as the sole basis for a negative opinion.

A complete rationale for all opinions should be provided. If the examiner is unable to provide the requested opinion without resort to speculation, the reasons and bases for this conclusion should also be provided.

4. If any benefit sought on appeal remains denied, furnish to the Veteran and his agent an appropriate supplemental statement of the case that includes clear reasons and bases for all determinations, and afford them the appropriate time period for response.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
James L. March
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs